EBENEZER C. MILLIKEN *vs.* JAMES D. THORNDIKE & others.

In an action on a lease which the defendants allege that they were induced to execute by fraudulent representations of the plaintiff, evidence of the conversation of the parties at the time of its execution is admissible.

Evidence that a lessee of a store was induced to sign the lease by a statement of the lessor, that "it was built according to the plans in every particular," made after a question by the lessee, whether "the drains were where they were to be according to the plans;" and that the drains were not built according to the plans, and the store was materially damaged in consequence; warrants a finding that the lessee was induced to sign the lease by a false representation, made by the lessor, of a material fact, which he either knew was false when he made it, or positively affirmed as of his own knowledge.

To an action on a lease for rent, the fact that the defendant was induced to execute the lease by fraudulent representations of the plaintiff, as to a material point in the construction of the demised premises, is a good defence, although the defendant entered under the lease and remained in possession a week, if he left as soon as the fraud was discovered.

CONTRACT to recover rent of a store on Congress Street in Boston, under the covenants in an indenture of lease dated Oc-

tober 1, 1867, by which the premises were demised by the plain-
tiff to the defendants. The answer denied that the defend-
ants had executed the indenture, and alleged that, if they had
done so, they had been induced thereto by the false and fraud-
ulent representations of the plaintiff. Trial in the superior
court, before *Morton*, J., who, after a verdict for the defendants,
allowed a bill of exceptions, of which the material part was as
follows :

" The plaintiff proved the execution of the lease, and that the
rent, becoming due according to the terms of the lease, for the
quarters ending December 31 and March 31, was demanded and
not paid.

" It appeared that the store upon the leased premises had
been recently built for the plaintiff, and completed about the lat-
ter part of September ; that, before the building was completed,
the defendants had by parol arranged with the plaintiff to hire
the building, and had been shown the plans thereof; that on
October 1, 1867, they entered into possession ; and that, some
weeks after this, the plaintiff brought to them the lease to be
executed. The defendants contended that they had been in-
duced to sign the lease by false and fraudulent representations
made by the plaintiff, and introduced evidence tending to show
that, when the plaintiff brought the lease to be signed by them,
a communication was had with him. The plaintiff objected
to the admissibility of this conversation, but the judge ruled
that it was competent under the pleadings. Three witnesses
testified to the conversation, whose statements differed some-
what as to the exact language used. The substance of their
testimony was as follows : The plaintiff brought in the lease,
and asked the defendants to sign it. The defendants said that
they were not satisfied with the way the store was built ; that it
had settled, and was not properly built, and was not safe ; and
declined signing the lease. The plaintiff replied that it was built
according to the plans in every particular. The defendants asked
if the drains were where they were to be according to the plans.
After some further communication, the defendants said, ' If the
store is built according to the plans, we ought to sign the lease ;'

to which the plaintiff replied, ' It is built according to the plans in every particular;' whereupon the defendants executed the lease.

" It appeared that, about a week after the lease was executed, the partition wall between this and the adjoining store settled, a portion of the front wall fell in, and the building became unfit for use, and dangerous, and the defendants at once moved out, obtaining a store elsewhere, and had not since occupied the leased premises. ,

" The defendants also introduced testimony tending to show that the store was not built according to the plans; particularly that the drain to empty the water-closets was not built as laid down in the plan, but much nearer the partition wall, and in some places was lower than the foundation of the wall, and thus caused or contributed to the settling of the wall. There was contradictory testimony as to the construction and erection of the plaintiff's drain, and as to whether its construction contributed to the settling of the wall. It did not appear by any direct testimony that the plaintiff knew where the drain was constructed, or anything in regard to its construction, till after the accident. The store was repaired and ready for occupancy in about a month after the accident.

" The judge instructed the jury that, if the defendants were induced to execute the lease by representations made by the plaintiff of material facts which were false, they would be entitled to avoid the lease upon proving, either that the plaintiff knew them to be false when he made them, or that the plaintiff, with a view to induce the defendants to execute the lease, positively affirmed them as of his own knowledge; that, whatever the language used, if it was intended only to express a belief or opinion founded upon information or other sources, it was not sufficient, but that the plaintiff must have intended and been understood by the defendants to affirm that he knew the facts of his own knowledge."

*C. A. Welch,* for the plaintiff, cited *Hazard* v. *Irwin,* 18 Pick. 95; *Haycraft* v. *Creasy,* 2 East, 92; *Medbury* v. *Watson,* 6 Met. 246; *Hemmer* v. *Cooper,* 8 Allen, 334; *Feret* v. *Hill,* 15 C. B 207.

*E. Avery*, (*G. M. Hobbs* with him,) for the defendants.

COLT, J. The defence relied on in this case is fraud, and the conversation had at the time the lease was executed was admissible upon the issue raised.

The jury have found that the defendants were induced to sign the lease by a false representation, made by the plaintiff, of a material fact, which he either knew was false when he made it, or positively affirmed as of his own knowledge. It is objected that the evidence did not justify this finding, because it is apparent, from the subject matter, that the representation made was intended, and should have been understood by the defendants, as only an expression of strong belief. If a statement is honestly made as a matter of opinion, judgment or estimate, it is not in law a false representation, although the matter thus stated should turn out to be untrue. But if a fact which is susceptible of knowledge is stated by a party as of his own knowledge, and such representation is relied upon as the basis of a contract, and damage results to the party deceived, it is a legal fraud, the consequences of which must be borne by him who makes the statement. The representation in this case was of the latter description. It was of a fact, the existence of which was not open and visible, of which the plaintiff had superior means of knowledge, and the language in which it was made contained no words of qualification or doubt. The evidence fully warranted the verdict of the jury. *Page* v. *Bent*, 2 Met. 371, 374.

The plaintiff further claims, in his argument, that the defendants cannot set up this defence in an action for rent due by the covenants in the lease; that the remedy is by action of deceit, to recover damages for the one month's time during which they were prevented from occupying the warehouse; that the lease was a good lease until avoided by the lessees, and the contract was an executed one.

The defence goes to the original execution and validity of the lease containing the covenants to pay rent. If consent to it was obtained from the defendants by fraud, then it was not such real and free consent as gives it validity. The false state-

ment by which it was procured must, indeed, be of some matter which is an essential element in the agreement, which goes to the substance of it, and upon which the consent was based. If it be of this material character, then there is no mutual assent to the contract, and the party deceived may rescind, provided he does it on discovery of the fraud, and returns to the other party everything of value which he has received under it. If the contract has been wholly executed on both sides, and the party injured cannot restore the other to his previous condition, the only remedy at law is by action for the deceit, or by recoupment of damages. But the mere possession of property which was the subject matter of the contract will not take away the right of rescission, if possession is surrendered as soon as the fraud is discovered. These familiar rules are equally applicable, whether the contract relates to real or personal property. *Whitney* v. *Allaire,* 4 Denio, 554.

It was held by this court, where a sale of certain lands in Maine was effected by false representations, and a deed taken, under which the vendees took possession, that they might rescind the sale, within a reasonable time, by an offer to release to the grantors ; and that an offer to release, made after the occupation of the land nearly four years, and the enjoyment of certain benefits therefrom, and after a suit for the purchase money had been commenced, was made in time, and would vest in the plaintiffs their original title substantially as it was before. *Holbrook* v. *Burt,* 22 Pick. 546.

In an action to recover rent upon a written lease for three years, when the defendant had occupied the premises for about a year, paying something towards the rent, and then removed, and in which the defence was that the lease was obtained by false representations, it was held in Maine that, although a party may not be able to rescind a contract partly executed, and recover back what he has paid under it, yet the defence was good to an action to compel the further execution of such contract. *Irving* v. *Thomas,* 18 Maine, 418.

The case of *Feret* v. *Hill,* 15 C. B. 207, cited by the plaintiff, contains nothing at variance with these decisions. That was

an action of ejectment, to obtain possession of rooms which had been leased by Hill to Feret, and of which, as lessee, he had been dispossessed by Hill; and the defence was that Feret had obtained the lease by a false representation that he intended to carry on a lawful trade therein, but had converted the premises into a brothel. It is carefully distinguished, in the decision, from a case where the plaintiff is seeking to enforce the stipulations of a contract; and at most it only decided that no intention, existing in the mind of the plaintiff, which could have been repented of in time, and which therefore did not affect the original validity of the instrument, would prevent the demise from taking effect, or give the defendant Hill a right forcibly to expel the lessee for using the premises for an unlawful purpose. The alleged fraud, if any, is admitted to have been collateral, and not of such a character as to defeat the title under the lease.

*Exceptions overruled.*